UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ALLEN and MISTY DALTON,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>GREATBANC TRUST COMPANY,<br><br>　　　　　Defendant. | Case No.<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Lisa Allen and Misty Dalton ("Plaintiffs"), by their undersigned attorneys, alleges upon personal knowledge, the investigation of their counsel, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

## BACKGROUND

1.　　Plaintiffs bring this suit against GreatBanc Trust Company ("GreatBanc"), the trustee for the Personal-Touch Employee Stock Ownership Plan ("ESOP").

2.　　Plaintiffs are participants in the ESOP and have vested in Personal-Touch shares allocated to their accounts in the ESOP.

3.　　This action is under the Employee Retirement Income Security Act ("ERISA"), § 502(a)(2), 29 U.S.C. § 1132(a)(2), for losses suffered by the ESOP and other relief under ERISA § 409, 29 U.S.C. § 1109, caused by GreatBanc when the ESOP acquired shares of Personal-Touch Home Care, Inc. ("Personal-Touch") in 2010.

4. Plaintiffs are employed by Personal-Touch and vested in shares of the ESOP. As alleged below, the ESOP and its participants have been cheated out of their hard-earned retirement benefits as a result of violations of the fiduciary duties and prohibited transactions under ERISA by GreatBanc.

5. Personal-Touch is a privately held company that provides home health care and related services to individuals in their homes in eleven states. On December 9, 2010, Personal-Touch (and/or its principal shareholders) sold an unknown percentage of its shares for $60 million to the ESOP (the "ESOP Transaction" or "Transaction").

6. GreatBanc represented the ESOP participants as Trustee in the ESOP Transaction. The ESOP Transaction allowed Personal-Touch and its principal shareholders to unload their shares in Personal-Touch at grossly inflated values and saddle ESOP participants with a crushing loan to finance the transaction. GreatBanc, as Trustee for the ESOP, completely failed to fulfill its duties to the ESOP and ESOP participants, like the Plaintiffs.

7. Personal-Touch and the selling shareholders, with GreatBanc's cooperation, caused Personal Touch to loan money to the ESOP to buy shares of Personal-Touch. GreatBanc allowed the ESOP to borrow $60 million payable in full over thirty years at a rate of six and one quarter percent (6.25%) per annum, a rate that was nearly thirty percent more than the 4.25% rate for similar financing. As a result, the selling shareholders saddled the ESOP and Personal-Touch employees with $60 million of debt, payable to Personal-Touch and the selling shareholders, at grossly inflated interest rates.

8. Just twenty-two (22) days after the ESOP Transaction, the ESOP lost over $13 million, an immediate decline of 22%. Currently, the value of the ESOP shares is unknown, but

the last valuation reported to ESOP participants as of December 31, 2013, showed the ESOP had lost over $33 million, a decline of over 55%. GreatBanc failed utterly to perform its fiduciary duties to act in the best interests of the ESOP participants.

9. Plaintiffs bring this action to recover the losses incurred by the ESOP's participants as a result of GreatBanc's failing to fulfill its fiduciary duties and engaging in prohibited transactions under ERISA.

## JURISDICTION AND VENUE

10. This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs to enjoin acts and practices that violate the provisions of Title I of ERISA, to require Defendant to make good to the ESOP for losses resulting from fiduciary violations, to restore to the ESOP any profits that have been made by the breaching fiduciaries and parties in interest through the use of ESOP assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

11. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

12. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C.§ 1132(e)(2), because some or all of the events or omissions giving rise to the claims occurred in this District and Defendant is headquartered in this District.

## PARTIES

13. At all relevant times, Plaintiff Lisa Allen has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP. Lisa Allen resides in Poquoson, Virginia. Lisa Allen was employed by Personal-Touch as a field nurse and is vested in the ESOP shares.

14. At all relevant times, Plaintiff Misty Dalton has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP. Misty Dalton resides in Cleveland, Ohio. Misty Dalton was employed by Personal-Touch as an administrator in the healthcare management department and is vested in the ESOP shares.

15. Defendant GreatBanc was the Trustee of the ESOP for the 2010 ESOP Transaction. GreatBanc at all relevant times was a "fiduciary" under ERISA because it was the Trustee. As Trustee, GreatBanc had exclusive authority to manage and control the assets of the ESOP and had sole and exclusive discretion to authorize the 2010 ESOP Transaction. Defendant GreatBanc at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). GreatBanc is headquartered in Lisle, Illinois.

## FACTUAL ALLEGATIONS

16. Personal-Touch Home Care, Inc. is a privately held entity that has more than fifty locations in eleven states. Each office is a separate corporate entity, but all bear the name "Personal-Touch". Each office is licensed by the State in which it operates. Personal-Touch is incorporated in Delaware and headquartered in Bayside, New York.

17. Personal-Touch is the Sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C.§ 1002(16)(B). Personal-Touch adopted the ESOP effective January 1, 2010. Prior to the sale of Personal-Touch stock to the ESOP, 100% of Personal-Touch stock was owned by the selling shareholders or entities that they controlled. After the sale it is unknown what percentage of Personal-Touch stock is owned by the ESOP, the selling shareholders or entities that they controlled.

18. Personal-Touch appointed GreatBanc as Trustee of the ESOP in 2010 for the purpose of representing the ESOP in the proposed 2010 ESOP transaction. It is unknown whether GreatBanc hired anyone as its financial advisor for the proposed 2010 ESOP Transaction.

19. GreatBanc, in its capacity as Trustee of the ESOP, purchased the common stock of Personal-Touch from the selling shareholders (or entities controlled by them) in consideration for payment of $60 million. The sale was seller-funded by a $60 million loan from Personal-Touch and/or the Selling Shareholders to the ESOP to be used to purchase Personal-Touch stock. This purchase/loan transaction ("ESOP Transaction") closed on December 9, 2010.

20. GreatBanc resorted to seller-financing because it was presumably unable to arrange bank financing for the ESOP Transaction. Any prospective bank lenders would have been troubled by the fact that the proposed ESOP Transaction would be 100% leveraged. No reasonably prudent bank would have financed the transaction at the $60 million dollar value without conducting robust due diligence on the loan to ensure that the collateral pledged, the stock, was actually worth $60 million. Because Personal-Touch or the Selling Shareholders could not obtain, or knew they could not obtain, bank financing for the transaction, they "financed" the transaction themselves with a 6.25% note. The 2010 ESOP Transaction's interest rate was significantly more than the customary rate of 4.25%, which was the then-available rate for issuance of debt with similar terms.

21. The ESOP's Personal-Touch stock lost nearly 22% its value, or just over $13 million, within 22 days of the Transaction, further demonstrating that the Transaction was a get-rich-quick scheme for the selling shareholders at the expense of Personal-Touch employees.

22. By the end of 2011, less than thirteen months after Personal-Touch shareholders sold their stock to the ESOP, the stock value had plummeted to $30,225,000, a nearly 50% decline in just over a year.

23. As of December 31, 2013, the ESOP's Personal-Touch shares were only worth $26,645,000 an additional loss of 10% over the previous year.

24. GreatBanc caused the ESOP to pay substantially more than the fair market value for Personal-Touch's stock, relied upon inflated financial projections and a flawed valuation report in valuing Personal-Touch's stock for the 2010 ESOP Transaction. GreatBanc should never have allowed the ESOP Transaction. It failed utterly to perform its fiduciary duties, and act in the best interests of the ESOP.

25. GreatBanc has a history of failing to carry out its fiduciary duties in ESOP transactions. In June of 2014, it entered into a settlement agreement with the United States Department of Labor in the United States District Court for the Central District of California. That settlement agreement required GreatBanc to follow a set of binding policies and procedures relating to its fiduciary duties and to its process of analyzing transactions involving purchases or sales by ERISA-covered ESOP's of employer stock that is not publically traded. Those policies and procedures, which would have been directly applicable to the Personal-Touch ESOP's purchase of Personal-Touch stock, were not in place at the time of the Personal-Touch stock sale in 2010.

26. The June 2014 Department of Labor Settlement Agreement also required GreatBanc to pay $4,772,727.27 to the Sierra ESOP (an ESOP for which GreatBanc served as trustee) and $477,272.73 to the United States Department of Labor.

6

27. GreatBanc either failed to conduct adequate due diligence or ignored the facts that were readily available both publicly and within Personal-Touch in acting as trustee for the 2010 ESOP Transaction

28. The interest rate on the loan was exorbitant. The accountants for the ESOP determined that a fair interest rate for similar private debt transactions was 4.25%. See 2010 5500 Financial Statement Note G. Thus not only did GreatBanc approve the acquisition of Personal-Touch stock at inflated values, it also approved a note that was significantly more than the going rate and that was paid to the very same Selling Shareholders who unloaded the overvalued stock.

29. The ESOP's Personal-Touch stock lost nearly 22% its value, or just over $13 million, within 22 days after the Transaction. By the end of 2011, less than thirteen months after Personal-Touch shareholders sold their stock to the ESOP, the stock value had plummeted to $30,225,000, a nearly 50% decline. As of December 31, 2013, the ESOP's Personal-Touch shares were valued at only $26,645,000 a loss of approximately 56% since the purchase.

30. Given the precipitous decline in the value of Personal-Touch stock, it is implausible that GreatBanc adequately and diligently reviewed or analyzed Personal-Touch's earning statements.

31. GreatBanc almost certainly did not undertake an independent investigation of Personal-Touch's revenues.

32. During the period since the Transaction, GreatBanc has not adequately sought to remedy the overpayments caused by the acts and omissions described above.

## **CLAIMS FOR RELIEF**

## FIRST CLAIM FOR RELIEF

### Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3)

33. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

34. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

35. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

36. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

37. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

38. Defendant GreatBanc breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These breaches include but are not limited to the following:

   A. GreatBanc failed to take reasonable steps to determine that it received complete, accurate and current information necessary to value Personal-Touch's stock;

   B. GreatBanc failed to conduct a reasonable inquiry as to whether the individuals responsible for providing Personal-Touch's financial projections: (a) had a conflict of interest in regards to the ESOP; and (b) served as agents or employees of persons with such conflicts;

   C. GreatBanc did not adequately investigate or evaluate the reasonableness of the financial projections considered in the proposed Transaction;

   D. GreatBanc did not take reasonable steps necessary to determine the prudence of relying on Personal-Touch's financial statements provided to them;

   E. GreatBanc caused the ESOP to pay more than fair market value for Personal-Touch stock;

   F. GreatBanc failed to conduct a thorough and independent review and adequately consider whether the 2010 purchase of Personal-Touch stock from the Selling Shareholders or the was in the best interests of the ESOP participants;

   G. GreatBanc caused the ESOP to take on excessive debt in connection with the 2010 ESOP Transaction;

    H.   GreatBanc failed to undertake an adequate and independent valuation of the Personal-Touch stock prior to the 2010 ESOP Transaction;

    I.   GreatBanc failed to adequately consider all material facts in negotiating the 2010 ESOP Transaction;

    J.   GreatBanc authorized the ESOP to take a loan to finance the acquisition of stock at an interest rate that was substantially above market rate for this type of transaction; and

    K.   GreatBanc failed to adequately remedy the ESOP's overpayment for Personal-Touch stock at any time between January 2010 and the present.

## SECOND CLAIM FOR RELIEF

### Engaging in Prohibited Transactions Forbidden by ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b)

39.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

40.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a plan fiduciary, here GreatBanc, from causing the plan, here the ESOP, to borrow money from party in interest, here Personal-Touch (the plan sponsor). ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E) prohibits GreatBanc from causing the ESOP to acquire Personal-Touch securities.

41.    ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price

paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

42. GreatBanc engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the ESOP transaction, and the prohibited transaction did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). GreatBanc failed to ensure that the ESOP paid no more than fair market value for Personal-Touch stock purchased by the ESOP, which lost 22% of its value in 21 days and has suffered a 56% loss through the end of 2013 indicates that GreatBanc did not perform a good faith valuation of the Personal-Touch stock purchased by the ESOP and that the ESOP paid substantially more than fair market value for Personal-Touch stock.

43. The loan and stock transactions were between the ESOP and parties in interest, namely the Selling Shareholders and/or Personal-Touch.

44. The loan and stock transactions between the ESOP and the Selling Shareholders and/or Personal-Touch were caused by GreatBanc in its capacity as Trustee for the ESOP.

45. ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

46. GreatBanc acted on behalf of the Selling Shareholders and/or Personal-Touch in connection with the ESOP's loan and stock transactions in 2010 with the Selling Shareholders

and/or Personal-Touch by causing the ESOP to acquire Personal-Touch stock at grossly inflated values, as evidenced by the large decline in the stock's value in less than one year. This greatly benefited the four the Selling Shareholders and/or Personal-Touch to the substantial detriment of the ESOP, even though GreatBanc was required to serve prudently and solely in the interest of the ESOP in connection with any such transaction.

47. GreatBanc received compensation from the Selling Shareholders and/or Personal-Touch as trustee for the ESOP in violation of ERISA § 406(b)(3).

48. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

49. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

50. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

51. GreatBanc has caused millions of dollars of losses to the ESOP by the prohibited transactions in an amount to be proven more specifically at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for judgment against Defendant and for the following relief:

A. Declare that Defendant GreatBanc breached its fiduciary duties;

B. Enjoin Defendant GreatBanc from further violations of its fiduciary responsibilities, obligations, and duties;

C. Issue a preliminary and permanent injunction removing GreatBanc as fiduciary and Trustee of the ESOP and barring Defendant GreatBanc from serving as fiduciary or Trustee of the ESOP in the future, and appointing a new independent fiduciary as Trustee of the ESOP;

D. Order that Defendant GreatBanc make good to the ESOP and/or to any successor trust(s) the losses resulting from its breaches and restoring any profits it has made through use of assets of the ESOP;

E. Order that Defendant GreatBanc provide other appropriate equitable relief to the ESOP, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant GreatBanc;

F. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

G. Order Defendant GreatBanc to disgorge any fees it received in conjunction with the 2010 ESOP Transaction or in connection with serving as Trustee for the ESOP as well as earnings and profits thereon;

H. Order Defendant GreatBanc to pay prejudgment interest; and

I. Award such other and further relief as the Court deems equitable and just.

## **JURY DEMAND**

Wherefore, Plaintiffs demand a trial by jury on all issues raised by the Complaint and so triable.

DATED: April 7, 2015.

        Respectfully submitted,

        **BAILEY & GLASSER, LLP**

        */s/ Elizabeth Hoskins Dow*
        Elizabeth Hoskins Dow (#6216262)
        ldow@baileyglasser.com
        Patrick Muench (BBO #6290298)
        pmuench@baileyglasser.com
        3601 McDonough Street
        Joliet IL 60431
        Telephone: 815-730-8213
        Facsimile: 304-342-1110

        Gregory Y. Porter, *pro hac vice* to be filed
        gporter@baileyglasser.com
        James L. Kauffman, *pro hac vice* to be filed
        jkauffman@baileyglasser.com
        Bailey & Glasser, LLP
        910 17th Street NW, Suite 800
        Washington, DC 20006
        Telephone: 202-463-2101
        Facsimile: 202-463-2103

        *Attorneys for Plaintiffs*