UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA ALLEN and MISTY DALTON, on behalf of the Personal-Touch Home Care Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated,<br><br>               **Plaintiffs,**<br><br>**v.**<br><br>GREATBANC TRUST COMPANY,<br><br>               **Defendant.** | **Case No. 1:15-cv-03053**<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiffs Lisa Allen and Misty Dalton ("Plaintiffs"), by their undersigned attorneys, on behalf of the Personal-Touch Home Care Employee Stock Ownership Plan and similarly situated participants in the Plan, allege upon personal knowledge, the investigation of their counsel, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery, as follows:

**BACKGROUND**

1.      Plaintiffs bring this suit against GreatBanc Trust Company ("GreatBanc"), the trustee for the Personal-Touch Home Care Employee Stock Ownership Plan (the "Plan").

2.      Plaintiffs are participants in the Plan and have vested in shares of Personal-Touch Home Care, Inc. ("Personal-Touch") allocated to their accounts in the Plan.

1

3.      This action is brought under the Employee Retirement Income Security Act ("ERISA"), § 502(a)(2), 29 U.S.C. § 1132(a)(2), for losses suffered by the Plan and other relief under ERISA § 409, 29 U.S.C. § 1109, caused by GreatBanc when the Plan acquired shares of Personal-Touch in 2010.

4.      Plaintiffs vested in shares of the Plan. As alleged below, the Plan and its participants have been deprived of hard-earned retirement benefits as a result of violations of ERISA fiduciary duty and prohibited transaction rules by GreatBanc.

5.      Personal-Touch is a privately held company that provides home health care and related services to individuals in their homes in at least eleven states. On December 9, 2010, Personal-Touch and/or its principal shareholders and/or other entities controlled by them sold an unknown percentage of their shares for $60 million to the Plan (the "ESOP Transaction" or "Transaction").

6.      GreatBanc represented the Plan and its participants as Trustee in the ESOP Transaction. The ESOP Transaction allowed Personal-Touch and its principal shareholders to unload their shares in Personal-Touch at inflated prices and saddle Plan participants with a crushing loan to finance the transaction. GreatBanc, as Trustee for the Plan, completely failed to fulfill its duties to the Plan and Plan participants, like the Plaintiffs.

7.      Personal-Touch and the selling shareholders, with GreatBanc's cooperation, caused Personal-Touch to loan money to the Plan to buy shares of Personal-Touch. GreatBanc allowed the Plan to borrow $60 million payable in full over thirty years at a rate of six and one quarter percent (6.25%) per annum. The selling shareholders saddled the Plan and Personal-

Touch employees with $60 million of debt, payable to Personal-Touch and/or the selling shareholders at unreasonably inflated interest rates.

8.     Just twenty-two (22) days after the ESOP Transaction, the Plan was valued more than $13 million lower, an immediate decline of 22%. Currently, the value of the Plan shares is unknown, but the valuation reported to Plan participants as of December 31, 2013, the last known valuation when this action was initiated, showed the Plan had lost over $35 million, a decline of over 58%.  GreatBanc failed utterly to perform its fiduciary duties to act in the best interests of the Plan participants.

9.     Plaintiffs bring this action to recover the losses incurred by the Plan as a result of GreatBanc's failing to fulfill its fiduciary duties and engaging in, and causing the Plan to engage in, prohibited transactions under ERISA.

## JURISDICTION AND VENUE

10.     This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require GreatBanc to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C.

§ 1132(e)(2), because some or all of the events or omissions giving rise to the claims occurred in

this District and Defendant is headquartered in this District.

## PARTIES

13.     At all relevant times, Plaintiff Lisa Allen has been a participant, as defined in

ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Lisa Allen resides in Poquoson, Virginia. Lisa

Allen is vested in the Plan shares.

14.     At all relevant times, Plaintiff Misty Dalton has been a participant, as defined in

ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. Misty Dalton resides in Cleveland, Ohio. Misty

Dalton is vested in the Plan shares.

15.     Defendant GreatBanc was the Trustee of the Plan for the 2010 ESOP Transaction.

GreatBanc at all relevant times was a "fiduciary" under ERISA because it was the Trustee. As

Trustee, GreatBanc had exclusive authority to manage and control the assets of the Plan and had

sole and exclusive discretion to authorize the 2010 ESOP Transaction. Defendant GreatBanc at

all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14).

GreatBanc is headquartered in Lisle, Illinois.

## FACTUAL ALLEGATIONS

16.     Personal-Touch Home Care, Inc. is a privately held entity that has more than fifty

locations in at least eleven states. Each office is a separate corporate entity, but all bear the name

"Personal-Touch" or "PT."  Each office is licensed by the State in which it operates.  Personal-

Touch is incorporated in Delaware and headquartered in Bayside, New York.  Personal-Touch

also does business as "Personal Touch Holding Corp."

17.     Personal-Touch is the Sponsor of the Plan within the meaning of ERISA

§ 3(16)(B), 29 U.S.C. § 1002(16)(B). Personal-Touch adopted the Plan effective January 1,

2010. Prior to the sale of Personal-Touch stock to the Plan, 100% of Personal-Touch stock was

owned by the selling shareholders or entities that they controlled (the "Selling Shareholders").

After the sale it is unknown, to Plaintiffs, what percentage of Personal-Touch stock is owned by

the Plan, the selling shareholders or entities that they controlled.

18.     Personal-Touch appointed GreatBanc as Trustee of the Plan in 2010 for the

purpose of representing the Plan in the proposed 2010 ESOP transaction. It is unknown whether

GreatBanc hired anyone as its financial advisor for the proposed 2010 ESOP Transaction.

19.     GreatBanc, in its capacity as Trustee of the Plan, purchased the common stock of

Personal-Touch from the selling shareholders (or entities controlled by them) in consideration for

payment of $60 million. The sale was seller-funded by a $60 million loan from Personal-Touch

and/or the Selling Shareholders to the Plan to be used to purchase Personal-Touch stock. The

ESOP Transaction closed on December 9, 2010.

20.     GreatBanc resorted to seller-financing because it was presumably unable to

arrange bank financing for the ESOP Transaction. Any prospective bank lenders would have

been troubled by the fact that the proposed ESOP Transaction would be 100% leveraged. No

reasonably prudent bank would have financed the transaction at the $60 million value without

conducting robust due diligence on the loan to ensure that the collateral pledged, the stock, was

actually worth $60 million. Because Personal-Touch or the Selling Shareholders could not

obtain, or knew they could not obtain, bank financing for the transaction, they "financed" the

transaction themselves with a 6.25% note. The 2010 ESOP Transaction's interest rate was significantly more than the customary rate.

21.     The Plan's Personal-Touch stock lost nearly 22% its value, or just over $13 million, within 22 days of the ESOP Transaction, further demonstrating that the Transaction was a get-rich-quick scheme for the Selling Shareholders at the expense of Personal-Touch employees.

22.     By the end of 2011, less than thirteen months after Personal-Touch shareholders sold their stock to the Plan, the stock value was $30,225,000, a nearly 50% decline from the initial over-valuation in just over a year.

23.     As of December 31, 2013, the Plan's Personal-Touch shares were only worth $26,645,000 an additional loss of 13% over the previous year.

24.     GreatBanc caused the Plan to pay substantially more than the fair market value for Personal-Touch stock, and relied upon inflated financial projections and a flawed valuation report in valuing Personal-Touch stock for the ESOP Transaction. GreatBanc should never have allowed the ESOP Transaction. It failed utterly to perform its fiduciary duties, and act in the best interests of the Plan.

25.     GreatBanc has a history of failing to carry out its fiduciary duties in ESOP transactions.  In June of 2014, it entered into a settlement agreement with the United States Department of Labor in the United States District Court for the Central District of California. That settlement agreement required GreatBanc to follow a set of binding policies and procedures relating to its fiduciary duties and to its process of analyzing transactions involving purchases or sales by ERISA-covered ESOPs of employer stock that is not publicly traded.  Those policies

6

and procedures, which would have been directly applicable to the Personal-Touch Plan's purchase of Personal-Touch stock, were not in place at the time of the stock sale in 2010.

26.     The June 2014 Department of Labor Settlement Agreement also required GreatBanc to pay $4,772,727.27 to the Sierra ESOP (an ESOP for which GreatBanc served as trustee) and $477,272.73 to the United States Department of Labor.

27.     GreatBanc either failed to conduct adequate due diligence or ignored the facts that were readily available both publicly and within Personal-Touch in acting as trustee for the ESOP Transaction.

28.     The interest rate on the loan was exorbitant. Thus not only did GreatBanc approve the acquisition of Personal-Touch stock at inflated values, it also approved a note that was significantly more than the going rate and that was paid to the very same Selling Shareholders who unloaded the overvalued stock.

29.     The Plan's Personal-Touch stock lost nearly 22% of its value, or just over $13 million, within 22 days after the Transaction. By the end of 2011, less than thirteen months after Personal-Touch shareholders sold their stock to the Plan, the reported stock value had plummeted to $30,225,000, a nearly 50% decline.  As of December 31, 2013, the Plan's Personal-Touch shares were valued at only $24,645,000 a loss of approximately 58% since the purchase.

30.     Given the precipitous decline in the valuation of Personal-Touch stock, it is implausible that GreatBanc adequately and diligently reviewed or analyzed Personal-Touch's earning statements. The December 2010 valuation was faulty.

31.     GreatBanc almost certainly did not undertake an independent investigation of Personal-Touch's revenues.

32.     During the period since the Transaction, GreatBanc has not adequately sought to remedy the overpayments caused by the acts and omissions described above.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),
29 U.S.C. §§ 1132(a)(2) and (a)(3)**

33.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

34.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

35.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

8

36.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

37.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

38.     Defendant GreatBanc breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These breaches include but are not limited to the following:

A.  GreatBanc failed to take reasonable steps to determine that it received complete, accurate and current information necessary to value Personal-Touch's stock;

B.  GreatBanc failed to conduct a reasonable inquiry as to whether the individuals responsible for providing Personal-Touch's financial projections: (a) had a conflict of interest in regards to the Plan; and (b) served as agents or employees of persons with such conflicts;

C.  GreatBanc did not adequately investigate or evaluate the reasonableness of the financial projections considered in the proposed Transaction;

D.  GreatBanc did not take reasonable steps necessary to determine the prudence of relying on Personal-Touch's financial statements provided to them;

E.  GreatBanc caused the Plan to pay more than fair market value for Personal-Touch stock;

F.  GreatBanc failed to conduct a thorough and independent review and adequately consider whether the 2010 purchase of Personal-Touch stock from

9

the Selling Shareholders was in the best interests of the Plan and its

participants and beneficiaries;

G.  GreatBanc caused the Plan to take on excessive debt in connection with the

ESOP Transaction;

H.  GreatBanc failed to undertake an adequate and independent valuation of the

Personal-Touch stock prior to the ESOP Transaction;

I.  GreatBanc failed to adequately consider all material facts in negotiating the

ESOP Transaction;

J.  GreatBanc authorized the Plan to take a loan to finance the acquisition of

stock at an interest rate that was substantially above market rate for this type

of transaction; and

K.  GreatBanc failed to adequately remedy the Plan's overpayment for Personal-

Touch stock at any time between January 2010 and the present.

## SECOND CLAIM FOR RELIEF

### Engaging in Prohibited Transactions Forbidden by ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b)

39.  Plaintiffs incorporate the preceding paragraphs as though set forth herein.

40.  ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a plan fiduciary, here

GreatBanc, from causing a plan, here the Plan, to borrow money from a party in interest, here

Personal-Touch (the plan sponsor). ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E), prohibits

GreatBanc from causing the Plan to acquire Personal-Touch securities.

41.  ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the

prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for

10

adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

42.     GreatBanc engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the ESOP Transaction, and the prohibited transaction did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). GreatBanc failed to ensure that the Plan paid no more than fair market value for Personal-Touch stock purchased by the Plan, which lost 22% of its value in 21 days and has suffered a 58% loss through the end of 2013. The facts indicate that GreatBanc did not perform a good faith valuation of the Personal-Touch stock purchased by the Plan and that the Plan paid substantially more than fair market value for Personal-Touch stock.

43.     The loan and stock transactions were between the Plan and parties in interest, namely the Selling Shareholders and/or Personal-Touch.

44.     The loan and stock transactions between the Plan and the Selling Shareholders and/or Personal-Touch were caused by GreatBanc in its capacity as Trustee for the Plan.

45.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration

11

for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

46.     GreatBanc acted on behalf of the Selling Shareholders and/or Personal-Touch in connection with the Plan's loan and stock transactions in 2010 with the Selling Shareholders and/or Personal-Touch by causing the Plan to acquire Personal-Touch stock at grossly inflated values, as evidenced by the large decline in the stock's valuation in less than one year. This greatly benefited the Selling Shareholders and/or Personal-Touch to the substantial detriment of the Plan, even though GreatBanc was required to serve prudently and solely in the interest of the Plan in connection with any such transaction.

47.     GreatBanc received compensation from the Selling Shareholders and/or Personal-Touch as trustee for the Plan in violation of ERISA § 406(b)(3).

48.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

49.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

50.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

51. GreatBanc has caused millions of dollars of losses to the Plan by the prohibited transactions in an amount to be proven more specifically at trial.

## CLASS ACTION ALLEGATIONS

52. Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All persons who were vested participants in the Personal-Touch Home Care Employee Stock Ownership Plan. Excluded from the Plaintiff Class are the shareholders and entities controlled by them who sold their Personal-Touch stock to the Plan and their immediate families; the directors of Personal-Touch; and legal representatives, successors, and assigns of any such excluded persons.

53. The Plaintiff Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class Members are unknown to Plaintiffs at this time, the Plan's Form 5500 filing for 2015 indicates that there were 2199 participants in the Plan as of December 31, 2015.

54. Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

a. Whether GreatBanc was a fiduciary under ERISA for the Plan;

b. Whether GreatBanc's fiduciary duties under ERISA included serving as Trustee for the Plan in the Plan's acquisition of Personal-Touch stock;

c. Whether GreatBanc engaged in a prohibited transaction under ERISA by permitting the Plan to purchase Personal-Touch stock for more than adequate consideration;

d. Whether GreatBanc engaged in a good faith valuation of the Personal-Touch stock in connection with the ESOP transaction;

13

e. Whether GreatBanc engaged in a prudent valuation of the Personal-Touch stock in connection with the ESOP transaction; and

f. The amount of losses suffered by the Plan and its participants as a result of GreatBanc's ERISA violations.

55. Plaintiffs' claims are typical of those of the Plaintiff Class. For example, Plaintiffs, like other Plan participants in the Plaintiff Class, suffered a diminution in the value of their Plan accounts because the Plan plunged in value after purchasing Personal-Touch stock for more than fair market value, and they continue to suffer such losses in the present because GreatBanc failed to correct the overpayment by the Plan in its time as trustee.

56. Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

57. Class certification of Plaintiffs' Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(l) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for GreatBanc, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

58. In the alternative, class certification of Plaintiffs' Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because GreatBanc has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and

injunctive relief with respect to Plaintiffs and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy GreatBanc's violations of ERISA.

59.     The names and addresses of the Plaintiff Class members are available from the Plan. Notice will be provided to all members of the Plaintiff Class to the extent required by Fed. R. Civ. P. 23.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment against Defendant and for the following relief:

A.     Declare that Defendant GreatBanc breached its fiduciary duties and caused the Plan to engage in prohibited transactions;

B.     Enjoin Defendant GreatBanc from further violations of ERISA and its fiduciary responsibilities, obligations, and duties;

C.     Issue a preliminary and permanent injunction removing GreatBanc as fiduciary and Trustee of the Plan and barring Defendant GreatBanc from serving as fiduciary or Trustee of the Plan in the future, and appointing a new independent fiduciary as Trustee of the Plan;

D.     Order that Defendant GreatBanc make good to the Plan and/or to any successor trust(s) the losses resulting from its breaches and restore any profits it has made through use of assets of the Plan;

E.     Order that Defendant GreatBanc provide other appropriate equitable relief to the Plan, including but not limited to surcharge, providing an accounting for profits, and imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant GreatBanc;

F.       Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein

pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained

for the common fund;

G.       Order Defendant GreatBanc to disgorge any fees it received in conjunction with

its services as Trustee for the Plan as well as earnings and profits thereon;

H.       Order Defendant GreatBanc to pay prejudgment interest;

I.       Enter an order certifying this lawsuit as a class action; and

J.       Award such other and further relief as the Court deems equitable and just.

DATED:      January 31, 2017.


Respectfully submitted,

**BAILEY & GLASSER, LLP**

*/s/ Patrick Owen Muench*
Patrick Muench (IL #6290298)
 pmuench@baileyglasser.com
3930 N. Lowell Ave.
Chicago, IL 60641
Telephone: (847) 899-1646
Facsimile: (202) 463-2103

Gregory Y. Porter, *pro hac vice*
 gporter@baileyglasser.com
Ryan T. Jenny
 rjenny@baileyglasser.com
Bailey & Glasser, LLP
1054 31st Street, NW, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103

*Attorneys for Plaintiffs*

16

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2017, the foregoing Plaintiffs' First Amended Complaint has been filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF).


_____/s/ Patrick Muench_____