# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| LISA ALLEN and MISTY DALTON, on behalf of the Personal-Touch Home Care Employee Stock Ownership Plan, and on behalf of a class of all other persons similarly situated, | |
| **Plaintiffs,** | **Case No. 1:15-cv-03053** |
| v. | **Hon. John Robert Blakey** |
| **GREATBANC TRUST COMPANY,** | |
| **Defendant.** | |

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' FIRST AMENDED COMPLAINT (Dkt. No. 56)

Defendant GreatBanc Trust Company ("Defendant"), by its undersigned attorneys, respectfully submits its answer and affirmative defenses to Plaintiffs' First Amended Complaint (Dkt. No. 56).

## BACKGROUND

1.      Plaintiffs bring this suit against GreatBanc Trust Company ("GreatBanc"), the trustee for the Personal-Touch Home Care Employee Stock Ownership Plan (the "Plan").

**ANSWER:**  Defendant admits the allegations in this paragraph.

2.      Plaintiffs are participants in the Plan and have vested in shares of Personal-Touch Home Care, Inc. ("Personal-Touch") allocated to their accounts in the Plan.

**ANSWER:**  Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal Touch Home Care, Inc., which is a non-existent entity.  Defendant admits that Plaintiffs are

- 1 -

participants in the Personal Touch Home Care Employee Stock Ownership Plan (the "Plan") and

are vested in shares of Personal Touch Holding Corporation stock that are owned by the Plan.

3.     This action is brought under the Employee Retirement Income Security Act
("ERISA"), § 502(a)(2), 29 U.S.C. § 1132(a)(2), for losses suffered by the Plan and other relief
under ERISA § 409, 29 U.S.C. § 1109, caused by GreatBanc when the Plan acquired shares of
Personal-Touch in 2010.

**ANSWER:**  Defendant admits that this action purports to be brought under ERISA.  Defendant

denies the remaining allegations in this paragraph, and denies that Plaintiffs are entitled to the

relief that is requested.

4.     Plaintiffs vested [*sic*] in shares of the Plan.  As alleged below, the Plan and its
participants have been deprived of hard-earned retirement benefits as a result of violations of
ERISA fiduciary duty and prohibited transaction rules by GreatBanc.

**ANSWER:**  Defendant admits that Plaintiffs are vested in shares that are owned by the Plan.

Defendant denies the remaining allegations in this paragraph.

5.     Personal-Touch is a privately held company that provides home health care and
related services to individuals in their homes in at least eleven states.  On December 9, 2010,
Personal-Touch and/or its principal shareholders and/or other entities controlled by them sold an
unknown percentage of their shares for $60 million to the Plan (the "ESOP Transaction" or
"Transaction").

**ANSWER:**  Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal

Touch Home Care, Inc., which is a non-existent entity.  Defendant admits that Personal Touch

Holding Corporation is a privately-held entity that provides home health services in

- 2 -

87562670.8

approximately eleven states. Defendant further admits that, on December 13, 2010, the Plan,

represented by GreatBanc as independent Trustee, purchased shares of Personal Touch Holding

Corporation stock from its shareholders for an aggregate purchase price of $60,000,000 in an

arm's-length transaction (the "Transaction").

 

6.      GreatBanc represented the Plan and its participants as Trustee in the ESOP
Transaction. The ESOP Transaction allowed Personal-Touch and its principal shareholders to
unload their shares in Personal-Touch at inflated prices and saddle Plan participants with a
crushing loan to finance the transaction. GreatBanc, as Trustee for the Plan, completely failed to
fulfill its duties to the Plan and Plan participants, like the Plaintiffs.

**ANSWER:** Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal

Touch Home Care, Inc., which is a non-existent entity. Defendant admits that it was Trustee of

the Plan when the Plan purchased shares of Personal Touch Holding Corporation in the

Transaction, and was engaged as Trustee pursuant to the terms of a written engagement

agreement. Defendant denies the remaining allegations in this paragraph.

 

7.      Personal-Touch and the selling shareholders, with GreatBanc's cooperation,
caused Personal-Touch to loan money to the Plan to buy shares of Personal-Touch. GreatBanc
allowed the Plan to borrow $60 million payable in full over thirty years at a rate of six and one-
quarter percent (6.25%) per annum. The selling shareholders saddled the Plan and Personal-
Touch employees with $60 million of debt, payable to Personal-Touch and/or the selling
shareholders at unreasonably inflated interest rates.

**ANSWER:** Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal

Touch Home Care, Inc., which is a non-existent entity. Defendant admits that the Plan borrowed

$60 million payable in full over thirty years at a rate of six and one-quarter percent (6.25%) per

annum to finance the Transaction. Defendant denies the remaining allegations in this paragraph.

8. Just twenty-two (22) days after the ESOP Transaction, the Plan was valued more than $13 million lower, an immediate decline of 22%. Currently, the value of the Plan shares is unknown, but the valuation reported to Plan participants as of December 31, 2013, the last known valuation when this action was initiated, showed the Plan had lost over $35 million, a decline of over 58%. GreatBanc failed utterly to perform its fiduciary duties to act in the best interests of the Plan participants.

**ANSWER:** Defendant lacks knowledge or information sufficient to admit or deny what is unknown to Plaintiffs. Defendant denies the remaining allegations in this paragraph.

9. Plaintiffs bring this action to recover the losses incurred by the Plan as a result of GreatBanc's failing to fulfill its fiduciary duties and engaging in, and causing the Plan to engage in, prohibited transactions under ERISA.

**ANSWER:** Defendant admits that Plaintiffs purport to bring this action for the reasons stated in this paragraph, but denies the remaining allegations in this paragraph, and further denies that Plaintiffs are entitled to the relief that is requested.

## JURISDICTION AND VENUE

10. This action arises under Title I of ERISA, 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs under ERISA § 502(a), 29 U.S.C. § 1132(a), to enjoin acts and practices that violate the provisions of Title I of ERISA, to require GreatBanc to make good to the Plan losses resulting from its violations of ERISA, to restore to the Plan any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

**ANSWER:** Defendant admits that Plaintiffs have brought this action under ERISA § 502(a). Defendant denies that Plaintiffs are entitled to the relief that is requested.

- 4 -

11.     This Court has subject matter jurisdiction over this action pursuant to ERISA §
502(e)(1), 29 U.S.C. § 1132(e)(1).

**ANSWER:** Defendant admits that this Court has subject matter jurisdiction over this action

pursuant to ERISA § 502(e)(1).

12.     Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. §
1132(e)(2), because some or all of the events or omissions giving rise to the claims occurred in
this District and Defendant is headquartered in this District.

**ANSWER:** Defendant admits that venue is proper in this District.

## **PARTIES**

13.     At all relevant times, Plaintiff Lisa Allen has been a participant, as defined in
ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.  Lisa Allen resides in Poquoson, Virginia.  Lisa
Allen is vested in the Plan shares.

**ANSWER:** Defendant admits that Plaintiff Lisa Allen has been a participant in the Plan and that

Plaintiff Lisa Allen is vested in shares of Personal Touch Holding Corporation stock that are

owned by the Plan.  Defendant lacks sufficient knowledge or information to admit or deny where

Plaintiff Lisa Allen resides.

14.     At all relevant times, Plaintiff Misty Dalton has been a participant, as defined in
ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan.  Misty Dalton resides in Cleveland, Ohio.  Misty
Dalton is vested in the Plan shares.

87562670.8

**ANSWER:** Defendant admits that Plaintiff Misty Dalton has been a participant in the Plan and that Plaintiff Misty Dalton is vested in shares of Personal Touch Holding Corporation stock that are owned by the Plan. Defendant lacks sufficient knowledge or information to admit or deny where Plaintiff Misty Dalton resides. Defendant denies the remaining allegations in this paragraph.

15. Defendant GreatBanc was the Trustee of the Plan for the 2010 ESOP Transaction. GreatBanc at all relevant times was a "fiduciary" under ERISA because it was the Trustee. As Trustee, GreatBanc had exclusive authority to manage and control the assets of the Plan and had sole and exclusive discretion to authorize the 2010 ESOP Transaction. Defendant GreatBanc at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). GreatBanc is headquartered in Lisle, Illinois.

**ANSWER:** Defendant admits that it acted as the independent Trustee of the Plan in connection with the Transaction. Defendant admits that it acted as a fiduciary to the extent that it acted as the independent, discretionary Trustee to the Plan in connection with the Transaction. Defendant admits that, in its capacity as independent, discretionary Trustee to the Plan, it had sole discretion to determine whether or not to enter into the Transaction on behalf of the Plan. Defendant admits that it had the exclusive authority to represent the Plan in the Transaction. Defendant admits that it is headquartered in Lisle, Illinois. Defendant denies the remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

16. Personal-Touch Home Care, Inc. is a privately held entity that has more than fifty locations in at least eleven states. Each office is a separate corporate entity, but all bear the name "Personal-Touch" or "PT." Each office is licensed by the State in which it operates. Personal-

Touch is incorporated in Delaware and headquartered in Bayside, New York. Personal-Touch also does business as "Personal Touch Holding Corp."

**ANSWER:** Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal Touch Home Care, Inc., which is a non-existent entity. Defendant admits that Personal Touch Holding Corporation is a privately-held entity incorporated in Delaware and headquartered in Bayside, New York. Defendant further admits that Personal Touch Holding Corporation has approximately twenty-three operating companies, and operates from approximately forty-seven locations in approximately eleven states. Defendant denies the remaining allegations in this paragraph.

17.     Personal-Touch is the Sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). Personal-Touch adopted the Plan effective January 1, 2010. Prior to the sale of Personal-Touch stock to the Plan, 100% of Personal-Touch stock was owned by the selling shareholders or entities that they controlled (the "Selling Shareholders"). After the sale it is unknown, to Plaintiffs, what percentage of Personal-Touch stock is owned by the Plan, the selling shareholders or entities that they controlled.

**ANSWER:** Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal Touch Home Care, Inc., which is a non-existent entity. Defendant admits that Personal Touch Holding Corporation is the Plan sponsor. Defendant further admits that Personal Touch Holding Corporation adopted the Plan effective January 1, 2010. Defendant further admits that, prior to the Transaction, Personal Touch Holding Corporation's shareholders owned 100% of the common stock in Personal Touch Holding Corporation. Defendant lacks sufficient knowledge or information to admit or deny what is unknown to Plaintiffs.

87562670.8

18.     Personal-Touch appointed GreatBanc as Trustee of the Plan in 2010 for the purpose of representing the Plan in the proposed 2010 ESOP transaction.  It is unknown whether GreatBanc hired anyone as its financial advisor for the proposed 2010 ESOP Transaction.

**ANSWER:**  Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal Touch Home Care, Inc., which is a non-existent entity.  Defendant admits that it was retained as Trustee of the Plan in 2010 to represent the Plan in connection with a proposed transaction. Defendant lacks sufficient knowledge or information to admit or deny what is unknown to Plaintiffs.

19.     GreatBanc, in its capacity as Trustee of the Plan, purchased the common stock of Personal-Touch from the selling shareholders (or entities controlled by them) in consideration for payment of $60 million.  The sale was seller-funded by a $60 million loan from Personal-Touch and/or the Selling Shareholders to the Plan to be used to purchase Personal-Touch stock.  The ESOP Transaction closed on December 9, 2010.

**ANSWER:**  Defendant denies the allegations in this paragraph.

20.     GreatBanc resorted to seller-financing because it was presumably unable to arrange bank financing for the ESOP Transaction.  Any prospective bank lenders would have been troubled by the fact that the proposed ESOP Transaction would be 100% leveraged.  No reasonably prudent bank would have financed the transaction at the $60 million value without conducting robust due diligence on the loan to ensure that the collateral pledged, the stock, was actually worth $60 million.  Because Personal-Touch or the Selling Shareholders could not obtain, or knew they could not obtain, bank financing for the transaction, they "financed" the transaction themselves with a 6.25% note.  The 2010 ESOP Transaction's interest rate was significantly more than the customary rate.

**ANSWER:**  Defendant denies the allegations in this paragraph.

87562670.8

21.     The Plan's Personal-Touch stock lost nearly 22% of its value, or just over $13 million, within 22 days of the ESOP Transaction, further demonstrating that the Transaction was a get-rich-quick scheme for the Selling Shareholders at the expense of Personal-Touch employees.

**ANSWER:** Defendant denies the allegations in this paragraph.

22.     By the end of 2011, less than thirteen months after Personal-Touch shareholders sold their stock to the Plan, the stock value was $30,225,000, a nearly 50% decline from the initial over-valuation in just over a year.

**ANSWER:** Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal Touch Home Care, Inc., which is a non-existent entity.  Defendant admits that the Personal Touch Holding Corporation stock owned by the Plan was valued at $30,225,000 as of December 31, 2011.  Defendant denies the remaining allegations in this paragraph.

23.     As of December 31, 2013, the Plan's Personal-Touch shares were only worth $26,645,000, an additional loss of 13% over the previous year.

**ANSWER:** Defendant denies the allegations in this paragraph.

24.     GreatBanc caused the Plan to pay substantially more than the fair market value for Personal-Touch stock, and relied upon inflated financial projections and a flawed valuation report in valuing Personal-Touch stock for the ESOP Transaction.  GreatBanc should never have allowed the ESOP Transaction.  It failed utterly to perform its fiduciary duties, and act in the best interests of the Plan.

**ANSWER:** Defendant denies the allegations in this paragraph.

87562670.8

25.     GreatBanc has a history of failing to carry out its fiduciary duties in ESOP transactions.  In June of 2014, it entered into a settlement agreement with the United States Department of Labor in the United States District Court for the Central District of California. That settlement agreement required GreatBanc to follow a set of binding policies and procedures relating to its fiduciary duties and to its process of analyzing transactions involving purchases or sales by ERISA-covered ESOPs of employer stock that is not publicly traded.  Those policies and procedures, which would have been directly applicable to the Personal-Touch Plan's purchase of Personal-Touch stock, were not in place at the time of the stock sale in 2010.

**ANSWER:**  Defendant admits that in June of 2014, it entered into an agreement with the United

States Department of Labor in a separate action styled *Solis v. GreatBanc Trust Company* (No.

12-cv-1648), filed in the United States District Court for the Central District of California, a case

wholly unrelated to this one.  Defendant admits that Plaintiffs have described selected portions of

that settlement agreement.  Defendant admits that the terms of that settlement agreement were

not in place in 2010, as the agreement was entered into in 2014.  Defendant denies the remaining

allegations in this paragraph.  Answering further, Defendant denies that the agreement reached in

*Solis v. GreatBanc Trust Company* has any relevance to this case, and denies that the settlement

agreement in *Solis v. GreatBanc Trust Company* suggests Defendant failed to carry out its

fiduciary obligations under ERISA.

26.     The June 2014 Department of Labor Settlement Agreement also required GreatBanc to pay $4,772,727.27 to the Sierra ESOP (an ESOP for which GreatBanc served as trustee) and $477,272.73 to the United States Department of Labor.

**ANSWER:**  Defendant admits that in June of 2014, it entered into an agreement with the United

States Department of Labor in a separate action styled *Solis v. GreatBanc Trust Company* (No.

12-cv-1648), filed in the United States District Court for the Central District of California, a case

- 10 -

wholly unrelated to this one. Defendant admits that Plaintiffs have described selected portions of

that settlement agreement. Defendant denies that the agreement reached in *Solis v. GreatBanc*

*Trust Company* has any relevance to this case, and denies that the settlement agreement in *Solis*

*v. GreatBanc Trust Company* suggests Defendant failed to carry out its fiduciary obligations

under ERISA.

27.     GreatBanc either failed to conduct adequate due diligence or ignored the facts that
were readily available both publicly and within Personal-Touch in acting as trustee for the ESOP
Transaction.

**ANSWER:** Defendant denies the allegations in this paragraph.

28.     The interest rate on the loan was exorbitant. Thus not only did GreatBanc
approve the acquisition of Personal-Touch stock at inflated values, it also approved a note that
was significantly more than the going rate and that was paid to the very same Selling
Shareholders who unloaded the overvalued stock.

**ANSWER:** Defendant denies the allegations in this paragraph.

29.     The Plan's Personal-Touch stock lost nearly 22% of its value, or just over $13
million, within 22 days after the Transaction. By the end of 2011, less than thirteen months after
Personal-Touch shareholders sold their stock to the Plan, the reported stock value had
plummeted to $30,225,000, a nearly 50% decline. As of December 31, 2013, the Plan's
Personal-Touch shares were valued at only $24,645,000 a loss of approximately 58% since the
purchase.

**ANSWER:** Defendant states that Plaintiffs incorrectly define "Personal-Touch" as Personal

Touch Home Care, Inc., which is a non-existent entity. Defendant admits that the Personal

Touch Holding Corporation stock owned by the Plan was valued at $30,225,000 as of December 31, 2011, and that the Personal Touch Holding Corporation stock owned by the Plan was valued at $24,645,000 as of December 31, 2013. Defendant denies the remaining allegations in this paragraph.

30.     Given the precipitous decline in the valuation of Personal-Touch stock, it is implausible that GreatBanc adequately and diligently reviewed or analyzed Personal-Touch's earning statements. The December 2010 valuation was faulty.

**ANSWER:** Defendant denies the allegations in this paragraph.

31.     GreatBanc almost certainly did not undertake an independent investigation of Personal-Touch's revenues.

**ANSWER:** Defendant denies the allegations in this paragraph.

32.     During the period since the Transaction, GreatBanc has not adequately sought to remedy the overpayments caused by the acts and omissions described above.

**ANSWER:** Defendant denies the allegations in this paragraph.

- 12 -

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),

### 29 U.S.C. §§ 1132(a)(2) and (a)(3)

33.     Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Defendant incorporates its answers as though set forth herein.

34.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge its duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.  The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur.  A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

**ANSWER:** The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in this paragraph.

35.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

**ANSWER:** Defendant admits that Plaintiffs purport to quote a portion of ERISA § 409, 29 U.S.C. § 1109.

- 13 -

36.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

**ANSWER:**  The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Defendant states that ERISA § 502(a)(2) authorizes certain civil claims, as set forth more fully in ERISA.

37.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

**ANSWER:**  The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Defendant states that ERISA § 502(a)(3) authorizes certain civil claims, as set forth more fully in ERISA.

38.     Defendant GreatBanc breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  These breaches include but are not limited to the following:

A.     GreatBanc failed to take reasonable steps to determine that it received complete, accurate and current information necessary to value Personal-Touch's stock;

B.     GreatBanc failed to conduct a reasonable inquiry as to whether the individuals responsible for providing Personal-Touch's financial projections:  (a) had a conflict of interest in regards to the Plan; and (b) served as agents or employees of persons with such conflicts;

C.     GreatBanc did not adequately investigate or evaluate the reasonableness of the financial projections considered in the proposed Transaction;

- 14 -

D.     GreatBanc did not take reasonable steps necessary to determine the prudence of relying on Personal-Touch's financial statements provided to them;

E.     GreatBanc caused the Plan to pay more than fair market value for Personal-Touch stock;

F.     GreatBanc failed to conduct a thorough and independent review and adequately consider whether the 2010 purchase of Personal-Touch stock from the Selling Shareholders was in the best interests of the Plan and its participants and beneficiaries;

G.     GreatBanc caused the Plan to take on excessive debt in connection with the ESOP Transaction;

H.     GreatBanc failed to undertake an adequate and independent valuation of the Personal-Touch stock prior to the ESOP Transaction;

I.     GreatBanc failed to adequately consider all material facts in negotiating the ESOP Transaction;

J.     GreatBanc authorized the Plan to take a loan to finance the acquisition of stock at an interest rate that was substantially above market rate for this type of transaction; and

K.     GreatBanc failed to adequately remedy the Plan's overpayment for Personal-Touch stock at any time between January 2010 and the present.

**ANSWER:** Defendant denies the allegations in this paragraph and each of its subparagraphs.

## SECOND CLAIM FOR RELIEF

### Engaging in Prohibited Transactions Forbidden by ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b)

39.    Plaintiffs incorporate the preceding paragraphs as though set forth herein.

**ANSWER:** Defendant incorporates the preceding paragraphs as though set forth herein.

- 15 -

40.     ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a plan fiduciary, here GreatBanc, from causing a plan, here the Plan, to borrow money from a party in interest, here Personal-Touch (the plan sponsor).  ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E), prohibits GreatBanc from causing the Plan to acquire Personal-Touch securities.

**ANSWER:**  The allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in this paragraph.

41.     ERISA § 408(e), 29 U.S.C. § 1108(e), provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration.  ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary."  ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

**ANSWER:**  Defendant admits that in the first two sentences of this paragraph, Plaintiffs purport to quote a portion of ERISA §§ 408(e) & 3(18)(B).  Defendant states that the exemptions set forth in ERISA §§ 408(e) & 3(18)(B) contain more language than Plaintiffs' partial quotation and characterization thereof.  The remaining allegations in this paragraph state legal conclusions to which no response is required.  To the extent a response is required, Defendant denies that Plaintiff has completely and accurately described the exemption in ERISA § 408(e).

42.     GreatBanc engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the ESOP Transaction, and the prohibited transaction did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e).  GreatBanc failed to ensure that the Plan paid no more than fair market value for Personal-Touch

- 16 -

stock purchased by the Plan, which lost 22% of its value in 21 days and has suffered a 58% loss through the end of 2013. The facts indicate that GreatBanc did not perform a good faith valuation of the Personal-Touch stock purchased by the Plan and that the Plan paid substantially more than fair market value for Personal-Touch stock.

**ANSWER:** Defendant denies the allegations in this paragraph.


43.     The loan and stock transactions were between the Plan and parties in interest, namely the Selling Shareholders and/or Personal-Touch.

**ANSWER:** Defendant denies the allegations in this paragraph.


44.     The loan and stock transactions between the Plan and the Selling Shareholders and/or Personal-Touch were caused by GreatBanc in its capacity as Trustee for the Plan.

**ANSWER:** Defendant denies the allegations in this paragraph.


45.     ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

**ANSWER:** The allegations in this paragraph state legal conclusions to which no response is

required. To the extent a response is required, Defendant admits that Plaintiffs have quoted a

portion of the statute but denies Plaintiffs' interpretation of the statute or any wrongdoing

thereunder.

46.     GreatBanc acted on behalf of the Selling Shareholders and/or Personal-Touch in connection with the Plan's loan and stock transactions in 2010 with the Selling Shareholders and/or Personal-Touch by causing the Plan to acquire Personal-Touch stock at grossly inflated values, as evidenced by the large decline in the stock's valuation in less than one year.  This greatly benefited the Selling Shareholders and/or Personal-Touch to the substantial detriment of the Plan, even though GreatBanc was required to serve prudently and solely in the interest of the Plan in connection with any such transaction.

**ANSWER:**  Defendant denies the allegations in this paragraph.

47.     GreatBanc received compensation from the Selling Shareholders and/or Personal-Touch as trustee for the Plan in violation of ERISA § 406(b)(3).

**ANSWER:**  Defendant admits that it received compensation from Personal Touch Holding

Corporation as Trustee for the Plan.  Defendant denies any alleged violations of ERISA, and

denies the remaining allegations in this paragraph.

48.     ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

**ANSWER:**  Defendant admits that Plaintiffs purport to quote a portion of ERISA § 409, 29

U.S.C. § 1109.  Defendant denies Plaintiffs' interpretation of that provision or any wrongdoing

thereunder.

49.      ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

**ANSWER:**  The allegations in this paragraph state legal conclusions to which no response is

required.  To the extent a response is required, Defendant states that ERISA § 502(a)(2)

authorizes certain civil claims, as set forth more fully in ERISA.

50.      ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

**ANSWER:**  The allegations in this paragraph state legal conclusions to which no response is

required.  To the extent a response is required, Defendant states that ERISA § 502(a)(3)

authorizes certain civil claims, as set forth more fully in ERISA.

51.      GreatBanc has caused millions of dollars of losses to the Plan by the prohibited transactions in an amount to be proven more specifically at trial.

**ANSWER:**  Defendant denies the allegations in this paragraph.

## CLASS ACTION ALLEGATIONS

52.      Plaintiffs bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b), on behalf of the following class:

> All persons who were vested participants in the Personal-Touch Home Care Employee Stock Ownership Plan.  Excluded from the Plaintiff Class are the shareholders and entities controlled by them who sold their Personal-Touch stock to the Plan and their immediate families; the

- 19 -

directors of Personal-Touch; and legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:** Defendant admits Plaintiffs purport to bring this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b). Defendant denies that a class action is appropriate under the Federal Rules of Civil of Procedure or under ERISA § 502(a)(2).

53. The Plaintiff Class is so numerous that joinder of all members is impracticable. Although the exact number and identities of Class Members are unknown to Plaintiffs at this time, the Plan's Form 5500 filing for 2015 indicates that there were 2,199 participants in the Plan as of December 31, 2015.

**ANSWER:** Whether the purported Plaintiff Class is numerous is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies this allegation. Defendant lacks knowledge or information sufficient to admit or deny what is unknown to Plaintiffs. Answering further, Defendant denies that a class action is appropriate under the Federal Rules of Civil of Procedure or under ERISA § 502(a)(2).

54. Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

a. Whether GreatBanc was a fiduciary under ERISA for the Plan;

b. Whether GreatBanc's fiduciary duties under ERISA included serving as Trustee for the Plan in the Plan's acquisition of Personal-Touch stock;

c. Whether GreatBanc engaged in a prohibited transaction under ERISA by permitting the Plan to purchase Personal-Touch stock for more than adequate consideration;

- 20 -

      d.      Whether GreatBanc engaged in a good faith valuation of the Personal-Touch stock in connection with the ESOP transaction;

      e.      Whether GreatBanc engaged in a prudent valuation of the Personal-Touch stock in connection with the ESOP transaction; and

      f.      The amount of losses suffered by the Plan and its participants as a result of GreatBanc's ERISA violations.

**ANSWER:** Whether questions of law and fact are common to the Plaintiff Class as a whole is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies this allegation. Defendant denies the remaining allegations in this paragraph and its subparagraphs. Answering further, Defendant denies that a class action is appropriate under the Federal Rules of Civil of Procedure or under ERISA § 502(a)(2).

55.     Plaintiffs' claims are typical of those of the Plaintiff Class. For example, Plaintiffs, like other Plan participants in the Plaintiff Class, suffered a diminution in the value of their Plan accounts because the Plan plunged in value after purchasing Personal-Touch stock for more than fair market value, and they continue to suffer such losses in the present because GreatBanc failed to correct the overpayment by the Plan in its time as trustee.

**ANSWER:** Whether Plaintiffs' claims are typical of the purported Plaintiff Class is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies this allegation. Defendant denies the remaining allegations in this paragraph. Answering further, Defendant denies that a class action is appropriate under the Federal Rules of Civil of Procedure or under ERISA § 502(a)(2).

56.     Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class.  Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

**ANSWER:**  Whether the Plaintiffs will fairly and adequately represent and protect the interests of the purported Plaintiff Class is a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies this allegation.  Defendant denies the remaining allegations in this paragraph.  Answering further, Defendant denies that a class action is appropriate under the Federal Rules of Civil of Procedure or under ERISA § 502(a)(2).

57.     Class certification of Plaintiffs' Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for GreatBanc, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

**ANSWER:**  Whether class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) is a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies this allegation.  Defendant denies the remaining allegations in this paragraph.

58.     In the alternative, class certification of Plaintiffs' Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because GreatBanc has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.  The members of the Class are entitled to declaratory and injunctive relief to remedy GreatBanc's violations of ERISA.

**ANSWER:** Whether class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies this allegation. Defendant denies the remaining allegations in this paragraph.

59. The names and addresses of the Plaintiff Class members are available from the Plan. Notice will be provided to all members of the Plaintiff Class to the extent required by Fed. R. Civ. P. 23.

**ANSWER:** Defendant admits that Plan participants are identifiable. Whether notice is appropriate under the Federal Rules of Civil Procedure is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies this allegation. Defendant denies the remaining allegations in this paragraph.

**WHEREFORE**, Defendant respectfully requests that this Court enter judgment in its favor.

## <u>DEFENDANT'S AFFIRMATIVE DEFENSES</u>

Without assuming the burden of proof on any issue as to which it does not have the burden of proof, Defendant asserts the following affirmative defenses:

<u>**FIRST AFFIRMATIVE DEFENSE:**</u>  **Exemptions from Prohibited Transactions.**

Plaintiffs' ERISA §§ 502(a)(2) & 502(a)(3) claims for prohibited transactions under ERISA §§ 406(a)(1)(B), 406(a)(1)(E), & § 406(b) fail in whole or in part because the prohibited transaction rules in ERISA § 406 do not apply to:

a) The December 13, 2010 sale of Personal Touch Holding Corporation stock to the Personal Touch Home Care Employee Stock Ownership Plan (the "Transaction");

- 23 -

b) The loan made by Personal Touch Holding Corporation to the Personal Touch Home Care Employee Stock Ownership Plan in connection with the Transaction; and

c) Compensation paid by Personal Touch Holding Company to GreatBanc Trust Company.

These transactions are exempt from the prohibited transaction rules pursuant to the following exemptions in ERISA § 408:

a) ERISA § 408(b)(3) provides that the prohibitions in § 406 shall not apply to a loan to an employee stock ownership plan, when the loan is primarily for the benefit of participants and beneficiaries of the plan, and the loan's interest rate is not in excess of a reasonable rate. ERISA § 408(b)(3) permits a plan to give collateral if the collateral are qualifying employer securities.

b) ERISA § 408(e) provides that the prohibitions in § 406 shall not apply to the acquisition or sale by a plan of qualifying employer securities, when the acquisition or sale is for adequate consideration, when no commission is charged, and when the plan in an eligible individual account plan under ERISA § 407(d)(3), which includes employee stock ownership plans. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary."

c) ERISA § 408(b) provides that the prohibitions in § 406(b) shall not apply to contracting or making reasonable arrangements with a party in interest for services necessary for the establishment or operation of the plan, if the plan pays no more than reasonable consideration.

- 24 -

**SECOND AFFIRMATIVE DEFENSE:  Statute of Limitations.**

All of Plaintiffs' claims are barred by ERISA's statute of limitations set forth in ERISA §

413.

**WHEREFORE**, Defendant respectfully requests that this Court enter judgment in its

favor and against Plaintiffs.

Dated: February 21, 2017

Respectfully submitted,

**DRINKER BIDDLE & REATH LLP**

*/s/ Theodore M. Becker*

Theodore M. Becker
Richard J. Pearl

191 N. Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone:  (312) 569-1000
Facsimile:  (312) 569-3000
Email:  Theodore.becker@dbr.com
Email:  Richard.pearl@dbr.com

*Attorneys for Defendant*

- 25 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2017, I caused a true and correct copy of the

foregoing ***DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'***

***FIRST AMENDED COMPLAINT (Dkt. No. 56)*** to be filed electronically using the Court's

CM/ECF system and to thereby be served upon on all registered participants as identified in the

Notice of Electronic File.

*/s/ Theodore M. Becker*

Theodore M. Becker
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606
Telephone: (312) 569-1000
Facsimile: (312) 569-3000
Email: Theodore.becker@dbr.com

*Attorney for Defendant*

- 26 -